# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| PAUL C. THOMPSON, | ) | |
| Plaintiff, | ) | Civil Action No. 7:17cv00111 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| H. W. CLARKE, *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

Paul C. Thompson, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging five claims against various officials employed by the Virginia Department of Corrections. Defendants Unit Manager (Mgr.) Younce, Unit Manager Swiney,[1] Lieutenant (Lt.) Adams, Sergeant (Sgt.) Large, and Correctional Officer (C/O) Crabtree (collectively "Defendants") filed a joint motion for partial summary judgment. Thompson failed to respond, making this matter ripe for disposition.[2] Upon review of the record, I conclude that the Defendants' motion for summary judgment must be granted in part and denied in part.

## I. Background

Plaintiff's relevant allegations are as follows.

On March 26, 2015, Thompson arrived at Red Onion State Prison (ROSP).

On March 27, 2015, Thompson argued with Defendant Sgt. Large about Thompson being supplied with writing materials. Sgt. Large then escorted Thompson from cell #414 (his cell) to cell #403 while Thompson was in his boxers, a t-shirt, socks, and tennis shoes. Thompson alleges that Sgt. Large and/or his associates had sprayed the toilet seat in cell #403 with pepper

---

[1] Mgr. Swiney is listed as "Swenney" on the court docket.
[2] Thompson requested additional time to respond to the motion to dismiss and/or motion for partial summary judgment on November 20, 2017 (Dkt. No. 20), December 14, 2017 (Dkt. No. 28), and March 28, 2018 (Dkt. No. 30). The court denied Thompson's last request for additional time on May 23, 2018. *See* Dkt. No. 33.

spray. Thompson contends that he experienced watery, burning eyes, a burning sensation in his skin, coughing, gagging, and difficulty breathing. Thompson wrote letters to Warden Barksdale concerning the incident.

On April 6, 2015, Defendant C/O Crabtree "opened the tray slot" to Thompson's cell, "called Thompson to the slot, and sprayed Thompson in the face" with pepper spray. Compl. ¶ 30, Dkt. No. 1. "At the time of the incident with [C/O] Crabtree, Thompson was sitting at the desk in his cell doing legal work. Compl. ¶ 30. Ten to fifteen minutes later, C/O Crabtree returned with other staff and ordered Thompson to cuff-up. He was taken to the shower to wash and rinse his face. Thompson was then taken to another cell in a different building. This cell was "filthy, with deca[y]ed food everywhere, [and] no toilet paper." Compl. ¶ 33.

On May 18, 2015, Offender V. Ball moved into Thompson's cell as his cellmate. On June 17, 2015, Ball assaulted Thompson in his cell. Ball told Thompson that Defendant Mgr. Swiney had informed Ball that Thompson was reporting to Mgr. Swiney on Ball's activities. As a result of Ball's assault of Thompson, Thompson experienced emotional distress and sustained bruises to his face, a broken finger, and a disjointed and bruised thumb.

Thompson arrived at ROSP on March 26, 2015, but did not receive his first shower until March 30, 2015. Thompson did not receive his second shower at ROSP until April 11, 2015. Thompson did not receive his personal property until April 2, 2015. Thompson was not allowed to have outside recreation until April 13, 2015. Thompson also did not receive showers or recreation time during the week of April 19 through April 25, 2015.

In Count II, the only relevant claim to this motion, Thompson alleges Eighth Amendment cruel and unusual punishment and/or assault and battery. He seeks $750,000 in compensatory damages jointly and severally against the defendants, $1.5 million in punitive damages,

injunctive relief to prevent continuous injury, emotional distress, and arbitrary retaliatory actions, costs of the lawsuit, and any other such relief found necessary. Thompson requests a jury trial. Defendants present a motion for partial summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

## II.

At the threshold, Thompson is proceeding *pro se* and, thus, is entitled to a liberal construction of the pleading. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 90-95 (2007).[3] However, "principles requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Id.* at 1276.

## III. Section 1983

Thompson brings his claims pursuant to 42 U.S.C. § 1983. Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). To state a claim under this statute, a plaintiff must establish that he has been deprived of rights through the actions of a person or persons acting under color of state law. Therefore, he must affirmatively state conduct or omissions by each of the named defendants, personally, that violated his federally protected rights. *See, e.g.,*

---

[3] This opinion omits internal quotation marks, citations, and alterations unless noted.

*Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

### IV. Summary Judgment Under Rule 56(a)

Defendants move for partial summary judgment as to Claim II. Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 250.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th

Cir. 1992). The evidence set forth must meet the "substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

## V. Discussion

Thompson alleges that Defendants violated his Eighth Amendment rights when they: failed to protect him (Count II(a)), used excessive force against him (Count II(b)), and subjected him cruel and unusual punishment regarding his living conditions (Count II(c)).

Defendants move for partial summary judgment on Count II for failure to exhaust administrative remedies, qualified immunity, and failure to raise a genuine dispute of material fact as to whether the defendants violated his Eighth Amendment rights. They have attached affidavits from IHO Messer, Nurse Bledsoe, head nurse at ROSP, Lt. Adams, C/O Crabtree, Mgr. Younce, Sgt. Large, and Mgr. Swiney, and video footage of the cell extraction on April 6, 2015.[4]

### 1. *Exhaustion*

The Prison Litigation Reform Act provides in 42 U.S.C. § 1997e(a) that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

---

[4] The doctrine of qualified immunity will be discussed where necessary. It provides government officials with certain protections from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity extends to protect officials "for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015). In deciding whether a defendant is entitled to qualified immunity, the court considers "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id.* at 881. A "court may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." *Id.*

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). There must be exhaustion even where administrative remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his action. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006) (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)). Failure to exhaust is an affirmative defense that defendant has the burden of pleading and proving. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available if a prisoner adduces facts that, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Thompson asserts that he was denied the paperwork required to administratively exhaust his claims. The defendants assert that the paperwork was easily available to Thompson and that he simply failed to comply with the PLRA. Therefore, I conclude there is a genuine dispute of material fact as to whether the defendants and other prison officials played a part in Thompson's failure to exhaust, and I will deny the motion for summary judgment as to exhaustion. *See id.*; *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

**2. *Count II(a): Failure to Protect***

Thompson alleges that the defendants failed to protect him. The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Specifically, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. Prison officials violate their duty when "physical harm at the hands of fellow inmates results from the deliberate or callous indifference of prison officials to specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). To establish a failure to protect claim, an inmate must allege: (1) that the alleged deprivation was objectively, sufficiently serious; and (2) the prison officials had a "sufficiently culpable state of mind." *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003); *see also Farmer*, 511 U.S. at 834.

"Only extreme deprivations are adequate to satisfy" the first factor. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an extreme deprivation, the inmate must allege "a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Odom*, 349 F.3d at 770. For the second factor, a prison official is liable if the official was deliberately indifferent to the inmate's health or safety. *Farmer*, 511 U.S. at 834. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Officials cannot be held liable when they merely "should have" recognized the

7

substantial risk of harm; "they actually must have perceived the risk." *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004).

Thompson alleges that Offender Ball assaulted him on June 17, 2015, resulting in emotional distress,[5] bruises to his face, a broken finger, and a disjointed and bruised right thumb. The doctor saw Thompson on July 21, 2015, over a month after the altercation. The doctor ordered an x-ray of both hands. Thompson later refused sick call on July 22, 2015 and did not inform staff of any pain related to the injuries from the altercation. The medical record reveals that Thompson had been diagnosed with mild degenerative disease with osteoporosis to his right hand, an avulsion fracture[6] to his left hand with mild displacement of his fourth middle finger and posterior dislocation of the fourth proximal interphalangeal joint[7] of the finger. On October 22, 2015, Dr. Smith noted that Thompson's grip and range of motion were functional with no pain, and referred him for an orthopedic follow-up, which Thompson refused.

At the threshold, Thompson fails to allege that Defendants Mgr. Younce, Lt. Adams, Sgt. Large, and C/O Crabtree were personally involved in the events leading to the altercation with Ball. *See Trulock*, 275 F.3d at 402. Thompson nakedly asserts that these defendants were deliberately indifferent concerning the conditions of Thompson's confinement, and knew or reasonably should have known that their actions/inactions would violate Thompson's Eighth Amendment rights. "Conclusory or speculative allegations do not suffice [for establishing a genuine dispute of material facts], nor does a mere scintilla of evidence in support of [the

---

[5] Thompson generally asserts that he had elevated levels of anxiety and stress, difficulty sleeping, depression, elevated levels of fear, paranoia, and an inability to focus.
[6] "An avulsion fracture occurs when a small chunk of bone attached to a tendon or ligament gets pulled away from the main part of the bone." Edward R. Laskowski, M.D., *Avulsion Fracture: How Is It Treated?*, Mayo Clinic (July 1, 2017), https://www.mayoclinic.org/avulsion-fracture/expert-answers/faq-20058520.
[7] The section of the finger closest to the knuckle.

plaintiff's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Therefore, Thompson's allegations fail to demonstrate a genuine dispute of material fact concerning the constitutional violations of Defendants Mgr. Younce, Lt. Adams, Sgt. Large, and C/O Crabtree. Therefore summary judgment is appropriate, and I will grant the motion as to these defendants on Count II(a).

Defendant Mgr. Swiney asserts that the Thompson's injuries were insufficiently serious to sustain an Eighth Amendment failure to protect claim. *Compare Saunders v. Buckner*, No. 1:07CV00501, 2008 WL 4104439 (E.D. Va. Aug. 28, 2009) (injuries *de minimis* when inmate sustained contusions and soreness in his head and body); *Taylor v. McDuffie*, 155 F.3d 479, 482 (4th Cir. 1998) (same for abrasions on wrists and ankles, slight swelling in jaw, and tenderness over some ribs); *Marshal v. Odom*, 156 F. Supp. 2d 525, 530 (D. Md. 2009) (headaches, abrasions, numbness, and swollen knots on the body not sufficiently serious); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (same cut to inmate's finger, even if skin ripped off); *Henderson v. Doe*, No. 98-5011, 1999 WL 378333 (S.D.N.Y. June 10, 1999) (broken finger not enough for Eighth Amendment claim); *with Nelson v. Henthorn*, 677 Fed. App'x 823, 825 (4th Cir. 2017) (injury was sufficiently serious when inmate suffered facial fracture that required the insertion of a titanium plate, seizures, and pain); *Vining v. Dep't of Corr.*, No. 12 Civ. 3267, 2013 WL 2036325, at *4-5 (S.D.N.Y. April 5, 2013) (asserting that broken hand with continuing pain and grip problems was a sufficiently serious injury because "mobility is fundamental to our continued health"); *Thompson v. Shutt*, No. 1:09CV01585, 2010 WL 4366107, at *4 (E.D. Cal. Oct. 27, 2010) (fracture and aborted surgery resulted in chronic pain and permanent disfigurement to pinky finger constituted significantly serious medical need).

Thompson does not allege that he suffered significant pain or other mobility issues continuously after the June 17, 2015 altercation, nor does he claim that he complained to prison staff about his injuries. However, he suffered more than a mere broken finger or contusion: he states that his injuries included a finger fracture, a dislocated finger, bruises, and emotional distress. *See Saunders*, 2008 WL 4104439; *Henderson*, 1999 WL 378333. Thompson's attending doctor also ordered that Thompson follow-up with an orthopedic doctor in order to ensure the injuries did not worsen. I acknowledge that Thompson's alleged injuries fall somewhere in the middle between the minor injuries of *Henderson* and the significantly more serious injuries of *Vining*. However, I conclude that Thompson's allegations create, at the very least, a genuine dispute of material fact as to the objective prong.

Defendant Mgr. Swiney concedes that Thompson's allegations satisfy the subjective prong. Defs.' Mot. for Summ. J. 18, Dkt. No. 23. Therefore, I will deny the motion for summary judgment as to Defendant Swiney on Count II(a).

### 3. *Count II(b): Excessive Force*

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). To resolve a claim that prison staff's excessive force violated the Eighth Amendment, the court must determine whether the force applied was "in a good faith effort to maintain or restore discipline or malicious and sadistically for the very purpose of causing harm." *Id.* at 320-21. Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff

and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 321.

i. **OC Spray on Toilet Seat**

Thompson asserts that Sgt. Large and/or his subordinates sprayed a cell's toilet seat with OC spray on March 27, 2015, and then forced Thompson to spend time in that cell. Thompson does not offer any other factual allegations regarding Sgt. Large, Mgr. Younce, Lt. Adams, Sgt. Large, or C/O Crabtree. He does not state that he saw or was told by others that Sgt. Large and/or his subordinates sprayed the toilet seat with OC spray, or even entered the cell. Under oath, Defendant Sgt. Large denies entering the cell in question and further denies spraying, or having anyone else spray, a toilet seat with OC spray. Defendants argue that Thompson's allegation must fail as speculative in light of an affirmative denial under oath by Sgt. Large. I agree. Thompson's naked allegation that Sgt. Large, personally or through subordinates, sprayed a toilet seat with OC spray is not entitled to be taken as true. *See Potomac Elec. Power Co.*, 312 F.3d at 649. Therefore, Thompson has not set forth specific facts based on personal knowledge to demonstrate the existence of a genuine dispute of fact for trial. *See Celotex Corp.*, 477 U.S. at 322-24. Defendants Mgr. Younce, Mgr. Swiney, Lt. Adams, Sgt. Large, and C/O Crabtree are entitled to qualified immunity for damages, and I will grant the motion for summary regarding the toilet seat incident.

ii. **OC Spray into Cell**

Thompson generally alleges that Defendants Mgr. Younce, Mgr. Swiney, Lt. Adams, Sgt. Large, and C/O Crabtree violated his Eighth Amendment rights when C/O Crabtree sprayed OC spray into his face while he did legal work in his cell. Defendants assert that Thompson was not performing legal work, but he was standing on his toilet attempting to flood his cell by breaking

11

the fire sprinkler. Defendants Mgr. Younce, Mgr. Swiney, and Lt. Adams assert that Thompson fails to allege any personal involvement as to them. Because Thompson has not asserted any facts tending to show that they had any part in the event, I agree that Thompson fails to assert a genuine dispute of material fact concerning these defendants. Therefore, Defendants Mgr. Younce, Mgr. Swiney, and Lt. Adams are entitled to summary judgment as to this claim.

However, Defendant C/O Crabtree concedes[8] that Thompson's allegations regarding his use of OC spray is sufficient to withstand a motion for summary judgment. Defs.' Mot. for Summ. J. 21, Dkt. Therefore, I will deny the motion for summary judgment as to C/O Crabtree on this claim.

### iii. Count II(c): Conditions of Confinement

To establish that living conditions constitute cruel and unusual punishment, a prisoner must show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta*, 330 F.3d at 634. "In order to demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* A sufficiently serious deprivation occurs when "a prison official's act or omission . . . results in the denial of the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991).

---

[8] Defendants also argue that C/O Crabtree's use of force was necessary and appropriate because disabling the fire sprinklers is dangerous and disruptive. Despite that assertion, Thompson's allegations still create a genuine dispute of material fact sufficient to withstand summary judgment regarding C/O Crabtree.

Thompson alleges that Defendants violated his rights because his cell was temporarily dirty, he did not receive adequate recreation time, he did not receive adequate shower time, he did not receive his personal property until April 2, 2015, and he could not bring personal items into the pod during recreation.

Defendants argue that these allegations are no more than a "routine discomfort [that are] part of the penalty that criminal offenders pay for their offenses against society," and that Thompson does not allege that the conditions caused him any injury. *Strickler*, 989 F.2d at 1380. I agree that Thompson has failed to allege a serious physical or mental injury resulting from the conditions of his confinement.[9] Where the defendants do not dispute the conditions and Thompson does not allege sufficient injury, the defendants are entitled to summary judgment. Accordingly, Thompson fails to allege a genuine dispute of material fact as the conditions of his confinement, and I will grant the motion for summary judgment on Count II(c).

### 4. *Supervisory Liability*

Construing Thompson's complaint liberally, he appears to allege that Defendants Mgr. Younce, Mgr. Swiney, Lt. Adams, Sgt. Large, and C/O Crabtree were liable as supervisors because they "acquiesced" to the subordinates' actions/inactions, were generally deliberately indifferent, and the defendants' failure to perform their supervisory duties violated his

---

[9] Thompson's allegations also do not sustain a finding of extreme deprivation, because temporary restrictions on outside recreation, showers, and personal property constitute a mere inconvenience. *See, e.g.*, *Whisman v. Johnson*, No. 7:10CV00010, 2010 WL 231356, at *2 (W.D. Va. Jan. 20, 2010) (lack of adequate daily recreation not extreme deprivation); *Trujillo v. Edgefield Fed. Pris.*, C.A. No. 0:10-2058, 2011 WL 2935853, at *4 (D.S.C. July 18, 2011) (lack of outside recreation and restriction of access to legal materials not extreme deprivation); *Shakka v. Smith*, 71 F.3d 162, 167-68 (4th Cir. 1995) (no Eighth Amendment violation where prison was not allowed to shower for three days after having human excrement thrown onto him because he was provided water and cleaning materials); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (no Eighth Amendment violation where inmates allowed only one shower per week).

constitutional rights. Compl. ¶¶ 154, 157, 158. However, Thompson does not provide any supporting facts for these legal conclusions. Therefore, the naked allegations that the defendants ordered their subordinates to commit constitutional violations cannot withstand the defendants' motion for summary judgment. *See Potomac Elec. Power Co.*, 312 F.3d at 649; *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (Evidence must be based on personal knowledge. Therefore, speculative allegations, like conclusory allegations, cannot withstand a motion for summary judgment.). As such, the defendants are entitled to summary judgment as to supervisory liability, and I will grant their motion.

## VI. Conclusion

For the foregoing reasons, I will deny the motion for summary judgment as to the failure to protect claim against Mgr. Swiney and the excessive force claim against C/O Crabtree, but I will grant the motion for summary judgment as to these defendants on all other claims. Furthermore, I will grant the motion for summary judgment in its entirety as to Mgr. Younce, Lt. Adams, and Sgt. Large.

An appropriate order will be entered this day.

**ENTER** this  28th  day of September, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE