**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **PAUL C. THOMPSON,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:17cv00111** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **H. W. CLARKE, *et al.*,** | ) | **By: Norman K. Moon** |
| **Defendants.** | ) | **United States District Judge** |

Paul C. Thompson, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging five claims against various officials employed by the Virginia Department of Corrections. Defendants filed a joint a motion to dismiss, and Thompson failed to respond, making this matter ripe for disposition.[1] *See* Dkt. No. 16.[2] Upon review of the record, I conclude that the defendants' motion to dismiss must be granted in part and denied in part.

## I.     Background

Plaintiff's allegations are as follows.

On March 26, 2015, Thompson arrived at Red Onion State Prison (ROSP).

On March 27, 2015, Thompson argued with Defendant Sergeant (Sgt.) Large about Thompson being supplied with writing materials. Sgt. Large then escorted Thompson from cell #414 (his cell) to cell #403 while Thompson was in his boxers, a t-shirt, socks, and tennis shoes. Thompson alleges that Sgt. Large and/or his associates had sprayed the toilet seat in cell #403

---

[1] Thompson requested additional time to respond to the motion to dismiss and/or motion for partial summary judgment on November 20, 2017 (Dkt. No. 20), December 14, 2017 (Dkt. No. 28), and March 28, 2018 (Dkt. No. 30). I denied Thompson's last request for additional time. *See* Dkt. No. 33.

[2] Several other motions are pending in this case, but I will address them in separate opinions.

with pepper spray. Thompson contends that he experienced watery, burning eyes, a burning sensation in his skin, coughing, gagging, and difficulty breathing. Thompson wrote letters to Warden Barksdale concerning the incident.

On April 6, 2015, Defendants Unit Manager (Mgr.) Younce, Lieutenant (Lt.) Adams, and Sgt. Large approached Thompson at his cell door and instructed him to stop writing to the warden. They then threatened Thompson with "negative consequences" if he continued to contact the warden. Approximately forty-five to sixty minutes after this conversation, Defendant Correctional Officer (C/O) Crabtree "opened the tray slot" to Thompson's cell, "called Thompson to the slot, and sprayed Thompson in the face" with pepper spray. Compl. ¶ 30, Dkt. No. 1. "At the time of the incident with [C/O] Crabtree, Thompson was sitting at the desk in his cell doing legal work. Compl. ¶ 30. Ten to fifteen minutes later, C/O Crabtree returned with other staff and ordered Thompson to cuff-up. He was taken to the shower to wash and rinse his face. Thompson was then taken to another cell in a different building. This cell was "filthy, with deca[y]ed food everywhere, [and] no toilet paper." Compl. ¶ 33. Mgr. Younce, Lt. Adams, and Sgt. Large again approached Thompson and told him to cease writing letters to the warden. When Thompson refused, Mgr. Younce "stated Thompson [was] short on his remaining time in VDOC and it would be a shame for Thompson to catch a street charge and extend his confinement." Compl. ¶ 35. C/O Crabtree later issued a disciplinary charge, asserting that Thompson ignored C/O Crabtree's instructions when Thompson continued to stand on the toilet seat and hit the sprinkler head. C/O Crabtree also averred that Thompson stated "I'm going to flood this place." Compl. ¶ 40.

On May 18, 2015, Offender V. Ball moved into Thompson's cell as his cellmate. On June 17, 2015, Ball assaulted Thompson in his cell. Ball told Thompson that Defendant Unit

Manager Swiney[3] had informed Ball that Thompson was reporting to Mgr. Swiney on Ball's activities. As a result of Ball's assault of Thompson, Thompson experienced emotional distress and sustained bruises to his face, a broken finger, and a disjointed and bruised thumb.

On June 3 and June 9, 2015, Thompson sent letters to Warden Barksdale concerning the conditions of his confinement. On June 10, 2015, Thompson's cell was searched and "staff" removed two white binders containing legal materials. Compl. ¶ 65. The unnamed staff did not issue Thompson a confiscation form.

On July 7, 2015, Thompson requested informal complaint forms from Defendant Sgt. Fleming.[4] Sgt. Fleming gave Thompson the forms, but when the other staff member left the room, Sgt. Fleming took the forms back from Thompson. Red Onion policy requires offenders to acquire informal complaint forms from officers ranked as sergeant or above. The officers require offenders to disclose the issue and the staff involved before passing out an informal complaint form. Thompson alleges that if the issue involves the sergeant or their staff, they refuse to give out the forms. Thompson also asserts that Defendants Regional Ombudsman Parr and Grievance Coordinator (G/C) Messer improperly responded to or failed to respond to his grievances.

Thompson arrived at ROSP on March 26, 2015, but did not receive his first shower until March 30, 2015. Thompson did not receive his second shower at ROSP until April 11, 2015. Thompson did not receive his personal property until April 2, 2015. Thompson was not allowed to have outside recreation until April 13, 2015. Thompson did not receive showers or recreation time during the week of April 19 through April 25, 2015. Thompson also complains that ROSP staff does not allow offenders to bring their personal property to recreation inside the pod.

---

[3] Mgr. Swiney is listed as "Swenney" on the court docket.
[4] Sgt. Fleming is listed as "Flemming" on the court docket.

## II.    Claims

Thompson asserts various constitutional and state law claims against Director Clarke, Warden Barksdale, Ombudsman Parr, G/C Messer, IHO Mullins, Mgr. Younce, Mgr. Swiney, Lt. Adams, Lt. Kiser, Sgt. Large, Sgt. Fleming, and C/O Crabtree.  Count I alleges First and Fourteenth Amendment violations regarding Thompson's attempts to exercise his rights to access the VDOC grievance procedure, the courts, and the warden; Count II alleges Eighth Amendment cruel and unusual punishment and/or assault and battery; Count III alleges Fourteenth Amendment due process violations; Count IV alleges state law claims of assault and/or battery; and Count V alleges violations of Va. Const. art. I, §§ 9, 11, 12.  Thompson also appears to allege that the defendants conspired to violate his constitutional rights.

He seeks $750,000 in compensatory damages jointly and severally against the defendants, $1.5 million in punitive damages, injunctive relief to prevent continuous injury, emotional distress, and arbitrary retaliatory actions, costs of the lawsuit, and any other such relief found necessary.  Thompson requests a jury trial.

## III.

At the threshold, Thompson is proceeding *pro se* and, thus, is entitled to a liberal construction of the pleading.  *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 90-95 (2007).[5] However, "principles requiring generous construction of *pro se* complaints are not . . . without limits."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them."  *Id.* at

---

[5] This opinion omits internal quotation marks, citations, and alterations unless otherwise noted.

1276; *see Kalderon v. Finkelstein*, Case No. 08 Civ. 9440, 2010 WL 3359473, at *1 n.1 (S.D.N.Y. Aug. 24, 2010) ("Plaintiff's complaint belongs to the everything-but-the-kitchen sink school of thought." "The complaint is extremely difficult to follow because of its extreme length and purported factual detail. The factual allegations are often repetitive, inconsistent, and contradicted by documents referenced in the complaint.").[6]

Defendants move to dismiss based on failure to comply with Rule 8 and Rule 20 of the Federal Rules of Civil Procedure, Thompson's ineligibility to file suit *in forma pauperis* under 28 U.S.C. § 1915, failure to state a claim on which relief may be granted, and qualified immunity.[7] At the threshold, I will not grant the motion to dismiss for failure to comply with Rule 8 and Rule 20—the complaint, though long and unwieldy, complies with the rules when liberally construed because the retaliation claim encompasses all of the defendants. Further, I will not grant the motion to dismiss based on § 1915, because the argument is not a valid basis for dismissal under Rule 12(b)(6). *See Thompson v. Clarke*, No. 7:17CV00010, slip op. at n.6 (W.D. Va. March 31, 2018).

---

[6] Thompson's complaint is incredibly lengthy (eighty pages), repetitive, commingled, and continuously reincorporated. *See* Compl. ¶¶ 83, 137, 163, 217, 238 (Thompson repeatedly incorporates all previous allegations into the following Counts while simultaneously asserting that he "pleads with particularity" as required by Fed. R. Civ. P. 26.). After liberally construing the pleading, I have discussed all of the claims that I could discover.

[7] The doctrine of qualified immunity will be discussed where necessary. It provides government officials with certain protections from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity extends to protect officials "for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015). In deciding whether a defendant is entitled to qualified immunity, the court considers "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id.* at 881. A "court may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." *Id.*

## IV.     Section 1983

Thompson brings several claims pursuant to 42 U.S.C. § 1983.  Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States.  *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).  To state a claim under this statute, a plaintiff must establish that he has been deprived of rights through the actions of a person or persons acting under color of state law.  Therefore, he must affirmatively state conduct or omissions by each of the named defendants, personally, that violated his federally protected rights.[8]  *See, e.g.*, *Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

## V.     Motion to Dismiss Under Rule 12(b)(6)

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded allegations.  *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson*, 551 U.S. at 94.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[8] To the extent Thompson brings this action against defendants in their official capacity for monetary damages, such claims are not cognizable under § 1983.  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).  Because the prison official defendants in their official capacity are not "persons" who can be sued under § 1983, I must grant the defendants' motion to dismiss with respect to these claims.

A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Twombly*, 550 U.S. at 555; *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## A. Defendants G/C Messer, Ombudsman Parr, and IHO Mullins

Thompson fails to state a claim against G/C Messer, Ombudsman Parr, and IHO Mullins. First, Thompson's allegations against G/C Messer and Ombudsman Parr exclusively derive from their actions processing and responding to Thompson's grievances. Prisoners do not have a constitutional right to access a state's grievance procedure or to have their grievances handled in any particular way. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Conrad v. Akers*, No. 7:10CV00560, 2011 WL 3847017, at *7 (W.D. Va. Aug. 30, 2011) (refusing to recognize a constitutional right in the grievance procedure when "grievances were shuffled from office to office with no permanent resolution to them"). Therefore, any alleged action by the defendants regarding the handling of grievances cannot sustain a § 1983 claim.

Second, Thompson's allegations against IHO Mullins are based on IHO Mullins' role as a hearings officer in Thompson's disciplinary proceedings. Specifically, Thompson alleges that his disciplinary charge was false and that he was found guilty without sufficient evidence. Any

claim that "would, if established, necessarily imply the invalidity of" a disciplinary conviction is not cognizable under § 1983. *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). For monetary and/or injunctive relief under § 1983 based on a conviction, a plaintiff must "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 485 (1994).

Thompson fails to state a claim on which relief may be granted regarding IHO Mullins because he has not alleged that his disciplinary proceeding was invalidated, and his claim is "based on allegations of deceit and bias on the part of the decision maker that necessarily implies the invalidity of the punishment imposed, [which] is not cognizable under § 1983." *Balisok*, 520 U.S. at 648; *see also Mukuria v. Mullins*, No. 7:15CV00451, 2015 WL 6958343, at *2 (W.D. Va. Nov. 10, 2015) (summarily dismissing § 1983 claims for monetary and injunctive relief based on a disciplinary conviction while the conviction remained valid).

Therefore, Thompson fails to state a claim on which relief may be granted regarding G/C Messer, Ombudsman Parr, and IHO Mullins,[9] and I will grant the motion to dismiss all claims against these defendants.[10]

## B. Conspiracy

To any extent Thompson is attempting to allege a conspiracy, such a claim is barred by the doctrine of intracorporate immunity. Intracorporate immunity "deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are

---

[9] These defendants are also entitled to qualified immunity because, insofar as Thompson failed to state a claim, he has also failed to establish the violation of a constitutional right. *Estate of Armstrong*, 810 F.3d at 898.

[10] However, I will also address the lack of personal involvement of these defendants.

employees or agents of the same entity and are acting within the scope of their employment/agency." *Vollette v. Watson*, 937 F. Supp. 2d 706, 727 (E.D. Va. 2013) (holding that "a single entity cannot conspire with itself"). Thompson raises conspiracy allegations against the defendants, who, at the time, were all employees or agents of the VDOC and were acting in the scope of their employment duty to help administer and oversee the VDOC. Therefore, I conclude that the defendants are entitled to intracorporate immunity, and I will grant the motion to dismiss as to the conspiracy claims.

### C. Count I: First and Fourteenth Amendment Claims

In Count I, Thompson alleges that Director Clarke, Warden Barksdale, Ombudsman Parr, G/C Messer, IHO Mullins, Mgr. Younce, Mgr. Swiney, Lt. Adams, Lt. Kiser, Sgt. Large, Sgt. Fleming, and C/O Crabtree retaliated against him and violated his First and Fourteenth Amendment rights. Defendants submit that Count I fails to state a claim on which relief may be granted. Count I is lengthy and its many subpart claims are commingled.

#### *1. Retaliation*

To establish a retaliation claim, a plaintiff must allege: (1) that he engaged in constitutionally protected conduct, (2) he suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011). An inmate must present more than "naked allegations of reprisal," *Adams*, 40 F.3d at 74, because "every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct," *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Recently, the Fourth Circuit determined that inmates "have a First Amendment right to be free from retaliation when they [] file [grievances]." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 542 (4th Cir. 2017).

"A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship. *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). Because "conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, . . . a plaintiff need not actually be deprived of [his] First Amendment rights in order to establish . . . retaliation." *Constantine*, 411 F.3d at 500. Nonetheless, "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill such activity." *Id.*

The test for causation requires an inmate to show that, but for the exercise of the protected right, the alleged retaliatory act would not have occurred. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). An inmate experiencing an adverse action shortly after a correctional officer learns that the prisoner engaged in a protected activity may create an inference of causation, but, generally, mere temporal proximity is "simply too slender a reed on which to rest a Section 1983 retaliatory [] claim." *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (finding an inference of causality only if "the temporal proximity [is] very close"). "The Fourth Circuit has not set forth a specific timeframe for what constitutes very close." *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 250 (D. Md. 2016). Nevertheless, even if the temporal proximity is insufficient to create an inference of causation, "courts may look to [events that might have occurred during] the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

### i. Defendants Director Clarke, Warden Barksdale, Ombudsman Parr, G/C Messer, IHO Mullins, and Lt. Kiser

Thompson fails to adequately allege personal involvement on behalf of Defendants Director Clarke, Warden Barksdale, Ombudsman Parr, G/C Messer, IHO Mullins, and Lt. Kiser. Liability in a civil rights case is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). "A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the sub-agents or servants or other persons properly employed by or under him, in the discharge of his official duties." *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888); *see also Mandsager v. Univ. of N.C. at Greensboro*, 269 F. Supp. 2d 662, 678 (M.D.N.C. 2003) (granting 12(b)(6) motion to dismiss a § 1983 civil rights action for failing to allege personal liability). In his complaint, Thompson nakedly asserts that Defendants Director Clarke and Warden Barksdale "ordered" their subordinates to retaliate against Thompson. Such a conclusory statement with no specific supporting factual allegations is not entitled to be considered true. *See Iqbal*, 556 U.S. at 678. Further, Thompson does not plausibly allege a retaliation claim against these defendants because he does not assert that they had any involvement in specific retaliatory acts regarding Thompson's First Amendment rights. None of these defendants had any personal relation to the alleged retaliation-based events of March 27, April 6, June 10, or June 17, 2015.

Without direct involvement, the only remaining basis for suit against these defendants would be under *respondeat superior*, which is not available in § 1983 actions. *Iqbal*, 556 U.S. at 676 (holding no vicarious liability in § 1983 case).

However, the Fourth Circuit has held that supervisory liability may exist under § 1983 if a plaintiff can establish three elements: (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "that the supervisors response to that knowledge was so inadequate as to show deliberate indifference to or tact authorization of the alleged offensive practices"; and (3) "that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

To establish a pervasive and unreasonable risk of harm, the plaintiff must present evidence "that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014). The second element requires that a plaintiff "demonstrate a supervisor's continued inaction in the face of documented widespread abuses." *Id.* Lastly, "proof of causation may be direct . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." *Id.* at 226-27.

Thompson has not adequately alleged knowledge of widespread conduct, a pervasive risk of constitutional injury, an inadequate response, or an affirmative causal link between the defendant supervisors' inaction and the particular constitutional injury he suffered. Therefore, Thompson fails to state a retaliation claim against Defendants Director Clarke, Warden

Barksdale, Ombudsman Parr, G/C Messer, IHO Mullins, and Lt. Kiser.[11]  Accordingly, I will grant the motion to dismiss as to the retaliation claims against them.

    **ii.**       **Defendants Mgr. Younce, Mgr. Swiney, Lt. Adams, Sgt. Large, Sgt. Fleming,**

                    **and C/O Crabtree**

    As for Defendants Mgr. Younce, Mgr. Swiney, Lt. Adams, Sgt. Large, Sgt. Fleming, and C/O Crabtree, Thompson adequately pleads a retaliation claim.  First, he sufficiently alleges that he engaged in constitutionally protected conduct: he has a constitutional right to not be retaliated against for accessing the grievance procedure, the warden, and/or the courts.  *See Booker*, 855 F.3d at 542.  Second, he has adequately stated that he suffered an adverse action.  He contends that defendants variously pepper sprayed him, deprived of him informal complaints and/or legal materials, moved him into a cell that had pepper or OC spray on the toilet, caused him to be assaulted by another inmate, and charged him with a false disciplinary infraction.  Certainly, prison officials pepper spraying an inmate, making his cell unsafe, refusing to provide needed materials, and fraudulently disciplining Thompson would tend to discourage him from exercising his rights.

    Third, Thompson asserts that multiple defendants ordered their subordinates to "target [him] for punishment and retribution as a means to retaliate" against him.  Compl. ¶ 106. Specifically, on March 27, 2015 Thompson requested writing materials to update the courts of his transfer to ROSP, and Sgt. Large argued with Thompson about the materials, refused to provide the materials, and moved Thompson to a cell that had OC or pepper spray on the toilet. Thompson later wrote to the warden to complain about the events of March 27, 2015.  On April

---

[11] These defendants are also entitled to qualified immunity because, insofar as Thompson failed to state a claim, he has also failed to establish the violation of a constitutional right. *Estate of Armstrong*, 810 F.3d at 898.

6, 2017, defendants Mgr. Younce, Lt. Adams, and Sgt. Large confronted Thompson and demanded that he cease contacting the warden. When Thompson refused, they threatened Thompson. According to Thompson, less than an hour after the confrontation with Mgr. Younce, Lt. Adams, and Sgt. Large, C/O Crabtree called for Thompson, opened the tray slot, and sprayed Thompson in the face with OC spray. Further, after C/O Crabtree and other staff took Thompson to the shower, Thompson was escorted[12] to an unsanitary cell where he had to eat lunch and dinner. In the evening, Thompson returned to his cell, but Mgr. Younce, Lt. Adams, and Sgt. Large again confronted Thompson and "admonished" him to stop writing to the warden. When Thompson "flat-out refused" to do so, Mgr. Younce again threatened Thompson.

Later on April 6, 2017, C/O Crabtree filed a disciplinary charge against Thompson which states that he OC sprayed Thompson because Thompson was attempting to set off the sprinkler. Thompson disputes the charge, stating multiple reasons why he would not have wanted to set off the sprinkler, including the personal property, legal materials, and law books in the cell at the time. Thompson also complains that the defendants regularly denied him showers, recreation time, materials necessary to file informal complaints, grievances, and court pleadings during the period from March 27, 2015 to mid-April, 2015.[13] Furthermore, Thompson asserts that, after he again contacted the warden on June 3 and 9, 2015, his cell was "shaken down" on June 10, and ROSP staff confiscated legal materials. Thompson also alleges that Mgr. Swiney encouraged Offender Ball to hurt him, and that Sgt. Fleming refused to provide and/or seized Thompson's grievance procedure forms.

---

[12] Thompson does not specifically allege that any of the defendants brought him to the unsanitary cell. Compl. ¶ 33.

[13] He alleges that the defendants refused to provide informal complaint forms until after the thirty-day statute of limitations period expired under VDOC policy.

Construing Thompson's complaint liberally and taking his allegations as true,[14] he adequately states a retaliation claim against Defendants Mgr. Younce, Mgr. Swiney, Lt. Adams, Sgt. Large, Sgt. Fleming, and C/O Crabtree.  Thompson alleges (1) the defendants had personal knowledge that Thompson was exercising his right to not be retaliated against for participating in the grievance system, contacting the warden, and litigating in the courts, (2) the defendants personally sought to prevent him from exercising his rights, and (3) there is "suspect timing" and "close temporal proximity" because the defendants' alleged adverse actions and threats all occurred within a two-and-a-half month span of the protected conduct.  *See, e.g.*, *King v. Rumsfeld*, 328 F.3d 145, 151, n.5 (4th Cir. 2003) (finding that a two-and-a-half month gap between protected activity and an adverse action was sufficiently narrow to establish the causation prong of the prima facie case solely on the basis of temporal proximity); *Larry v. Marion Cty. Coal Co.*, 302 F. Supp. 3d 763, 775 (N.D. W. Va. 2018) (asserting plaintiff established prima facie case of retaliation when adverse action occurred within two months of protected conduct).  Therefore, I conclude that Thompson has properly stated a retaliation claim against Defendants Mgr. Younce, Mgr. Swiney, Lt. Adams, Sgt. Large, Sgt. Fleming, and C/O Crabtree.[15]

### 2.  *Access to the Courts*

---

[14] Defendants argue that Thompson's allegations are almost entirely legal conclusions which are not entitled to be taken as true.  However, although he does sprinkle in a great deal of conclusory statements into his allegations, his factual assertions are enough to adequately state a retaliation claim against these defendants.

[15] The defendants are not entitled to qualified immunity because Thompson's First Amendment rights were clearly established at the time of the violations.  *See Booker*, 855 F.3d at 542-44 (holding that the First Amendment right not to be retaliated against for participating in the grievance procedure was clearly established by 2012).

Thompson also argues that Defendants' retaliation unconstitutionally restricted his First Amendment right of access to the courts.[16] Prisoners have a fundamental right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). To prove that a prisoner has been denied this right, a prisoner must show that he has suffered an "actual injury" because of the restrictions imposed upon him. *Strickler v. Waters*, 989 F.2d 1375, 1382 (4th Cir. 1993). The requirement of "actual injury" means the deprivation "actually prevented [plaintiff] from meeting deadlines, or otherwise prejudiced him in any pending litigation, or actually impeded his access to the courts." *Oswald v. Graves*, 819 F. Supp. 680, 683 (E.D. Mich. 1993).

Thompson has not alleged that he has suffered an actual injury. He has actively litigated in several suits both in this district and in the Eastern District of Virginia, filing complaints, motions, affidavits, and other documents.[17] The only "injuries" that Thompson alleges are that the defendants' actions denied him the possibility of exhausting his administrative remedies, and "caused [him] to give serious consideration of not exercising his First and Fourteenth Amendment rights." Compl. ¶¶ 110, 119. Such bare and unspecific allegations cannot sustain a claim for denial of access to the courts. Furthermore, he has not incurred any actual injury regarding his inability to exhaust his administrative remedies because his failure has been

---

[16] Thompson also appears to allege that the defendants violated his right of access to the warden and to the grievance procedure. However, neither are protected constitutional rights. *See Kinlock v. Myers*, No. 2:15CV00702, 2017 WL 9471789, at *15 (D.S.C. July 27, 2017) ("There is not an independent constitutional right to have a letter or complaint answered by a prison warden."); *Adams v. Rice*, 40 F.3d at 75 (no constitutional right to grievance procedure).

[17] Thompson is a busy litigator. He has filed several § 1983 suits, including: in the Eastern District: *Thompson v. Dolan*, No. 2:12CV00209; *Thompson v. Clarke*, No. 2:14CV00086; and *Thompson v. Clarke*, No. 2:15CV00439; and in the Western District: *Thompson v. Clarke*, No. 7:14CV00053; *Thompson v. Clarke*, No. 7:17CV00010; *Thompson v. Clarke*, No. 7:17CV00111; and *Thompson v. Younce*, No. 7:17CV00543.

excused by the court.[18]  Because Thompson fails to allege that he has suffered an actual injury that prejudiced him in any pending litigation or actually impeded his access to the courts, I conclude that he has failed to state a claim and will grant the motion to dismiss as to all defendants on this claim.[19]

### D.  Count II: Eighth Amendment Claim

Thompson alleges that Defendants Director Clarke, Warden Barksdale, Ombudsman Parr, G/C Messer, IHO Mullins, Mgr. Younce, Mgr. Swiney, Lt. Adams, Lt. Kiser, Sgt. Large, Sgt. Fleming, and C/O Crabtree violated his Eighth Amendment rights when they: failed to protect him (Count II(a)), used excessive force against him (Count II(b)), and subjected him cruel and unusual punishment regarding his living conditions (Count II(c)).  Defendants Director Clarke, Warden Barksdale, Ombudsman Parr, G/C Messer, IHO Mullins, Lt. Kiser, and Sgt. Fleming move to dismiss Count II as it relates to them, stating that Thompson fails to allege adequate levels of personal involvement. They are correct, and I will grant their motion to dismiss regarding this claim.

The "core judicial inquiry" of an Eighth Amendment claim is "the nature of the force—specifically, whether it was nontrivial and was applied . . . maliciously and sadistically to cause harm."  *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).  To establish a failure to protect claim, an

---

[18] Thompson also appears to allege in his many motions that ROSP staff are delivering his legal materials late and delaying his medical treatment in order to chill his First Amendment right of access to the courts.  However, Thompson still fails to allege an actual injury; he failed to file a response to the motion to dismiss and the motion for summary judgment despite having nearly three months to do so.  He has not plausibly alleged that the defendants kept his legal mail from him and sequestered him in the medical department for the entire three months. Regardless, he has not plausibly alleged that any defendant in this action has had personal involvement with any interference with his access to the courts.

[19] These defendants are also entitled to qualified immunity because, insofar as Thompson failed to state a claim, he has also failed to establish the violation of a constitutional right. *Estate of Armstrong*, 810 F.3d at 898.

inmate must allege that prison officials were deliberately indifferent to "specific known risks of [] harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987).

Thompson alleges that Sgt. Large and/or unnamed subordinates put pepper spray on the toilet of the cell Thompson was moved to, C/O Crabtree sprayed him in the face with pepper spray, and Mgr. Swiney told offender Ball that Thompson was informing on him, which resulted in Ball assaulting Thompson. Thompson does not allege any direct or personal involvement of Defendants Director Clarke, Warden Barksdale, Ombudsman Parr, Lt. Kiser, or Sgt. Fleming. Instead, Thompson merely asserts that these defendants "ordered their subordinates" to retaliate against him. Even construing Thompson's complaint liberally, Thompson fails to plausibly allege an Eighth Amendment claim against these defendants, because such a naked and conclusory allegation with no specific factual support is not entitled to be taken as true. *See Iqbal*, 556 U.S. at 679. Therefore, Thompson fails to state an Eighth Amendment claim as to Defendants Director Clarke, Warden Barksdale, Ombudsman Parr, Lt. Kiser, and Sgt. Fleming. These defendants are entitled to qualified immunity, and I will grant their motion to dismiss Count II.

### E. Count III: Due Process Claim

In Count III, Thompson names Director Clarke, Warden Barksdale, Ombudsman Parr, Mgr. Younce, Mgr. Swiney, Lt. Adams, Lt. Kiser, Sgt. Large, Sgt. Fleming, and C/O Crabtree. The defendants jointly move to dismiss the allegations for failure to state a claim.

#### 1. Generalized Substantive Due Process

In Count III, Thompson "incorporates" all of his complaint's previous 162 paragraphs into his due process claim. *See* Compl. ¶ 163. However, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of

government behavior, that Amendment, and not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Therefore, Thompson cannot successfully raise a substantive due process claim regarding the same governmental conduct underlying his First and Eighth Amendment claims in Counts I and II. Specifically, his allegations that he suffered retaliation and cruel and unusual punishment are squarely addressed pursuant to the analytical frameworks of the First and Eighth Amendments. Therefore, I will grant the motion to dismiss as to the substantive due process claims in Count III.

### 2. *Procedural Due Process*

To prevail on a procedural due process claim, Thompson "must first demonstrate that [he was] deprived of life, liberty, or property by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). To sustain such a claim as an inmate, Thompson must demonstrate that the conditions imposed constitute "atypical and significant hardships on inmates in relation to the ordinary incidents of prison life." *McKune v. Lile*, 536 U.S. 24, 37 (2002). Construing Thompson's complaint liberally, he appears to allege two procedural due process claims: (1) the confiscation of two binders of legal materials deprived him of a protected property interest; and (2) denials of showers and outside recreation time deprived him of a protected liberty interest. Both claims fail to state a claim on which relief may be granted.

First, "for intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Supreme Court has also determined that (1) the proper remedy for intentional deprivation of property by state actors was a suit in tort; (2) suits for intentional torts by Virginia state actors were not barred by

sovereign immunity; and (3) Virginia state tort remedies are generally adequate. *See id.* at 533-36. Thompson asserts that prison officials confiscated his binders, but he fails to allege that the state failed to provide him with an adequate postdeprivation remedy. Thompson's adequate postdeprivation remedy would have been to file a tort claim for improper deprivation of property. *See id.* at 535 (agreeing with the district court's finding that the proper remedy for intentional deprivation of property by a state employee was a tort claim under Virginia law). He failed to file such a lawsuit, and he has not alleged that the remedy was unavailable to him.[20] Therefore, Thompson has failed to allege a violation of a protected property interest.

Second, the occasional denial of showers and/or outside recreation time do not state a due process claim. *See Rivera v. Mathena*, No. 7:16CV00346, 2017 WL 34585012 at *6-7 (W.D. Va. Aug. 14, 2017) (rejecting the contention that "occasionally being denied showers and outside recreation sessions constitutes an atypical and significant hardship" for an inmate compared to normal prison conditions); *DePaola v. Clarke*, No. 7:17CV00028, 2017 WL 2984144, at *4 (W.D. Va. July 13, 2017) (concluding that inmates do not have a protected liberty interest in outside recreation "with specific frequency"). Thompson alleges that he did not have his first shower until four days after arrival at ROSP, his second shower followed twelve days later, he was denied showers for a week period shortly after, and that he had no outside recreation time until over two weeks after his transfer. I reject Thompson's contention that the short-term denial of Thompson's showers and outside recreation time violated a protected liberty interest. Although it is unfortunate that Thompson was unable to shower for several days in a row, such

---

[20] To the extent that Thompson's Fourteenth Amendment claim is based on an unnamed prison employee's failure to issue him a confiscation form in violation of VDOC policy, allegations of prison policy violations do not state a due process claim. *See United States v. Caceres*, 440 U.S. 741, 752-55 (1978).

deprivations were "occasional," and were not "atypical and significant hardships." *See Rivera*, 2017 WL 34585012, at *6-7; *McKune*, 536 U.S. at 37.

Therefore, Thompson fails to allege a Fourteenth Amendment due process claim on which relief may be granted. The defendants are entitled to qualified immunity, and I will grant the motion to dismiss as to Count III.

### F. Counts IV and V: State Law Claims

Thompson attempts to raise claims under Virginia state law and the Virginia Constitution. Specifically, Thompson alleges state law claims of assault in Count IV and Virginia Constitution violations in Count V. However, the statute of limitations for Virginia state law claims brought by incarcerated individuals has expired.

Generally, a statute of limitations argument would be an affirmative defense, not properly raised in a motion to dismiss pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 8(c); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, "if all facts necessary to the affirmative defense clearly appear on the face of the complaint," then a court may address the affirmative defense pursuant to Rule 12(b)(6). *Goodman*, 494 F.3d at 464. Virginia requires an inmate confined in a state or local correctional facility to bring a personal action relating to the conditions of his confinement within a year after the cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later. Va. Code § 8.01-243.2; *see also Thompson v. Clarke*, No. 7:17CV00010, 2018 WL 1955423, at *8 (W.D. Va. April 25, 2018) (applying Va. Code § 8.01-243.2 to state law claims, including assault and violations of the Virginia Constitution, in one of Thompson's many prior cases). The alleged state law violations occurred in 2015. Thompson did not exhaust his administrative remedies, so the

statute of limitations ran for one year, until 2016. Thompson did not file the present lawsuit until 2017. Therefore, I will grant the motion to dismiss Counts IV and V as time-barred.[21]

## VI.     Conclusion

For the foregoing reasons, I will deny the motion to dismiss as to the First Amendment retaliation claims (Count I) against Mgr. Younce, Mgr. Swiney, Lt. Adams, Sgt. Large, Sgt. Fleming, and C/O Crabtree, but grant the motion to dismiss as to these defendants on all other claims.[22]   Further, I will grant the motion to dismiss as to all claims against Director Clarke, Warden Barksdale, G/C Messer, Ombudsman Parr, IHO Mullins, and Lt. Kiser.

An appropriate order will be entered this day.

**ENTER** this <u>30th</u> day of September, 2018.

NORMAN K. MOON
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[21] Thompson also fails to demonstrate that he is entitled to equitable tolling. *See Cruz v. Maypa*, 773 F.3d 138, 146-47 (4th Cir. 2014) (Equitable tolling "is appropriate in two circumstances: first, when the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant, and second, when extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.").

[22] Mgr. Younce, Mgr. Swiney, Lt. Adams, Sgt. Large, and C/O Crabtree filed a separate motion for summary judgment as to Count II, and are not included in the motion to dismiss on that count.