# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| PAUL C. THOMPSON, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:17cv00111 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| H. W. CLARKE, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Paul C. Thompson, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. The matters before the court are two motions for extension of time, a motion for reconsideration, a motion for preliminary injunction, and a motion for a ruling. *See* Dkt. Nos. 34, 36, 37, 39, 44. After reviewing the record, I will grant the motions for extension of time, I will deny the motion for reconsideration and the motion for preliminary injunction, and I will dismiss the motion for a ruling as moot.

## I.     Miscellaneous Motions

At the threshold, I will grant both motions for extension of time. Dkt. Nos. 37, 39. Next, I will address the Thompson's motion for reconsideration and motion for a ruling.

Thompson filed a motion for reconsideration of the court's denial of his motion for extension of time to respond to the defendants' motion to dismiss and/or the motion for partial summary judgment. *See* Dkt. No. 34. As stated in the May 23, 2018 order, the court has granted Thompson multiple extensions, and informed him that, unless he made a showing of good cause, the court would not grant him any more additional time. He failed to show good cause, and the case proceeded accordingly. Therefore, I will deny the motion for reconsideration. Second, Thompson has moved for "a ruling." Dkt. No. 44. His patience is noted, and, after this opinion and order, I will have ruled on all pending motions. Therefore, the motion for a ruling is moot.

## II. Preliminary Injunction

Thompson also filed a motion for preliminary injunction, asserting that (1) he is being improperly detained in the medical department as part of a retaliatory conspiracy to prevent him from accessing his legal materials; (2) his medication is being supplemented with an unknown substance that exacerbates his conditions; (3) he has severe weight loss and his diet should be supplemented; and (4) his incarceration at ROSP and security level are improper and retaliatory.[1] For relief, he requests: (1) that staff either crush his meds in front of him or stop crushing the pills entirely; (2) that medical staff treat his medical issues; (3) access to his medical records; and (4) a lowering of his security level and/or transfer to another VDOC facility or to the Federal Bureau of Prisons.[2]

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing," that he is likely to succeed on the merits at trial; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20-22 (2008).

---

[1] Once again, Thompson's claims are numerous, commingled, and confusing. I have addressed all of his identifiable claims.

[2] Thompson has also requested that I "take into consideration" his other motion for injunctive relief in his related case, *Thompson v. Younce*, No. 7:17CV00543 (W.D. Va. Sept. 13, 2018). I decline to do so, considering he withdrew his complaint in that lawsuit, stating that he is working with ROSP's medical department concerning his medical issues and his long-term segregation. *See* Mot. to Withdraw Compl. 1, *Thompson v. Younce*, No. 7:17CV00543 (W.D. Va. Sept. 10, 2018).

An interlocutory injunction is an extraordinary remedy that is not appropriate when the harm complained of does not arise from the harm alleged in the complaint. *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997). The movant must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. *Id.*; *see In re Microsoft Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel*, 111 F.3d at 16; *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).

To establish a retaliation claim, a plaintiff must allege: (1) that he engaged in constitutionally protected conduct, (2) he suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011). An inmate must present more than "naked allegations of reprisal," *Adams*, 40 F.3d at 74, because "every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct," *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship. *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). Because "conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, . . . a plaintiff need not actually be deprived of [his] First Amendment rights in order to establish . . . retaliation." *Constantine*, 411

F.3d at 500. Nonetheless, "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill such activity." *Id.*

The test for causation requires an inmate to show that, but for the exercise of the protected right, the alleged retaliatory act would not have occurred. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). An inmate experiencing an adverse action shortly after a correctional officer learns that the prisoner engaged in a protected activity may create an inference of causation, but, generally, mere temporal proximity is "simply too slender a reed on which to rest a Section 1983 retaliatory [] claim." *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (finding an inference of causality only if "the temporal proximity [is] very close"). "The Fourth Circuit has not set forth a specific timeframe for what constitutes very close." *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 250 (D. Md. 2016). Nevertheless, even if the temporal proximity is insufficient to create an inference of causation, "courts may look to [events that might have occurred during] the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

At the threshold, Claims 2 and 3 are not related to the underlying suit, because Thompson sues non-medical defendants *only*.[3] Thompson has not alleged that these defendants, or the underlying claims against these defendants, are related to the crushing of his medications or his

---

[3] In this lawsuit, Thompson sues VDOC Director Clark, Warden Barksdale, Regional Ombudsman Parr, Grievance Coordinator Messer, Institutional Hearings Officer Mullins, Unit Manager Younce, Unit Manager Swiney, Lt. Adams, Lt. Kiser, Sgt. Large, Sgt. Fleming, and Correctional Officer Crabtree for retaliation, Eighth Amendment violations, and state law claims of assault.

4

weight loss. Those actions are performed and overseen by the medical department, and Thompson may file a separate lawsuit pursuing relief on these claims.[4]

Meanwhile, in Claims 1 and 4, Thompson either alleges that his access to the courts is being interfered with and/or retaliation is occurring. I note that Thompson fails to specifically allege that Claims 1 and 4, which involve events from another correctional facility in 2014 and 2015 and events in 2018, are related to the underlying complaint, which involve events from ROSP in 2015. However, out of an abundance of caution and the recent expansion of retaliation doctrine, I will analyze the merits of the claims. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 542 (4th Cir. 2017).

In Claim 1, Thompson generally alleges that he is being retaliated against and sequestered in the medical department in order to chill his access to the courts. Specifically, Thompson avers that the ROSP staff is unnecessarily confining him to the medical unit in order to separate him from his legal materials, because, while in the medical unit for observation, Thompson is not allowed access to his legal documents.

---

[4] In his filings, Thompson states that "[his] claims that this medical condition is related to the ROSP staff [who] are causing [his medical problems] by allocating another substance . . . appear to have some validity." Pl.'s Aff. in Supp. of Mot. for Injunctive/TRO Relief ¶ 12, Dkt. No. 39. The allegation, which does not allege any specific facts, is both conclusory and unrelated to the underlying complaint, which deals with the actions of unit managers and correctional officers in 2015. As to Thompson's argument that he requires supplements to his diet, Thompson may have lost a significant amount of weight in the past, but his weight has recently leveled off and the medical team has deemed him at a healthy weight. *See* Nurse Witt. Aff. ¶¶ 13, 16, 18, 21, 28, 35, Dkt. No. 38-1 (Thompson's weight was healthy and between 168 and 173 from April to June 2018.). To the extent Thompson argues that these claims are part of overall retaliation against him, they must also fail—he has not plausibly alleged that he engaged in constitutionally protected conduct, that he suffered an adverse action, or a causal link. *See Blount v. Tate*, No. 7:08CV00471, 2009 U.S. Dist. LEXIS 56665, at *4-5 (W.D. Va. Jan. 14, 2009) (denying injunction because assertions of speculative future retaliation and inmate's self-serving version of events not sufficient to find imminent danger or actual injury to his litigation efforts"); *Wright v. Swingle*, 482 Fed. App'x 294, 295 (9th Cir. 2012) (holding that crushing medication does not violate the constitution).

To the extent Claim 1 asserts retaliation, Thompson fails to establish the first prong of *Winter*. Thompson fully acknowledges he has several maladies that need medical attention, he has only spent a few days in the medical unit, and for the vast majority of the time, he has had access to his litigation documents.[5] Therefore, I conclude that the minor inconvenience of Thompson not having his legal materials for a few days while receiving medical treatment was not an adverse action. *See Daye v. Rubenstein*, 417 Fed. App'x 317, 319 (4th Cir. 1996).

Thompson also fails to state any facts supporting his argument that the defendants have retaliatory intent. Thompson does not specifically implicate any individual defendant in unlawfully forcing him to go to or stay in the medical department. His self-serving and conclusory statements are not entitled to be true, and cannot underpin a preliminary injunction. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mayo v. Bd. of Ed. of Prince George's Cty.*, 797 F. Supp. 2d 685, 689 n.4 (D. Md. 2011) (applying *Iqbal*'s pleading standard to preliminary injunctions). Therefore, Thompson is not entitled to injunctive relief on the retaliation claim because he fails to clearly establish that he would likely succeed on the merits.

To the extent Claim 1 asserts a denial of access to the courts, Thompson once again fails to establish the first prong of *Winter*. Prisoners have a fundamental right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). To prove that a prisoner has been denied this right, a prisoner must show that he has suffered an "actual injury" because of the restrictions imposed upon him. *Strickler v. Waters*, 989 F.2d 1375, 1382 (4th Cir. 1993). The requirement of "actual injury" means the deprivation "actually prevented [plaintiff] from meeting deadlines, or otherwise prejudiced him in any pending litigation, or actually impeded his access to the courts." *Oswald v. Graves*, 819 F. Supp. 680, 683 (E.D. Mich. 1993).

---

[5] Thompson spent from April 14 to April 18, 2018 and from June 11 to June 14, 2018, in the medical unit.

Thompson fails to plausibly allege that his time spent in the medical ward actually injured his ability to litigate. In fact, the public docket shows that Thompson has been able to simultaneously litigate multiple cases.[6] He has not established that he missed a deadline, was otherwise prejudiced in litigation, or the defendants actually impeded his access to the courts.[7] Instead, Thompson merely states that he was unable to access his legal materials for the few days that he spent in the medical unit. Therefore, Thompson is not entitled to injunctive relief on his claim regarding access to the courts because he has not clearly shown that he would likely succeed on the merits.[8]

In Claim 4, Thompson argues that his security classification and transfer are incorrect and a result of retaliation. He states that the security level is "simply retaliatory in nature," and that he has never received a disciplinary charge for assault, possession of a knife, or attempted escape. Pl.'s Mot. for Preliminary Inj. ¶ 8, Dkt. No. 36. He further states that his transfer to ROSP harmed him. The claim fails under the first two prongs of *Winter*.

In 2014, while Thompson was at River North Correctional Center (RNCC), the Institutional Classification Authority (ICA) convened to review Thompson's records. Thompson was present during the meeting. The minimum score for security level 5 is 32 points. Thompson scored 42 points, and the ICA reclassified him as security level 5. Thompson admits that, while

---

[6] Thompson is a busy litigator. He has filed several § 1983 suits, including: in the Eastern District: *Thompson v. Dolan*, No. 2:12CV00209; *Thompson v. Clarke*, No. 2:14CV00086; and *Thompson v. Clarke*, No. 2:15CV00439; and in the Western District: *Thompson v. Clarke*, No. 7:14CV00053; *Thompson v. Clarke*, No. 7:17CV00010; *Thompson v. Clarke*, No. 7:17CV00111; and *Thompson v. Younce*, No. 7:17CV00543.

[7] Thompson also requests his medical records. However, this case is not about medical treatment. If he requires medical records for another case, or wishes to sue regarding medical treatment, he may do so—in another lawsuit.

[8] Thompson also appears to allege that ROSP staff sought to interfere with his ability to litigate by changing his cell assignment on August 27, 2018 and placing his legal materials in "disarray." However, he has not sufficiently alleged that the defendants' actions caused him actual injury.

at RNCC, he was convicted of multiple offenses.[9]  RNCC is only a security level 4 facility. Therefore, Gale Jones at Central Classification Services (CCS) approved a transfer to ROSP because ROSP is a security level 5 facility.

Thompson asserts that there was no reason for his transfer and security level.  Thompson contends that Director Clarke and his subordinates have "stacked" charges against him, and have "stepped up their retaliatory actions against Thompson, causing Thompson physical injury and emotional distress . . . employ[ing] multipal [sic] methods."  Pl.'s Mot. for Preliminary Inj. ¶¶ 9-10.  For injuries, Thompson asserts that the defendants were responsible for an attempted sexual assault by another inmate in 2015, that ROSP has not treated his medical problems, and that his long-term segregation and overall confinement at ROSP has caused mental issues and weight loss.  However, Thompson fails to plausibly allege that the defendants had retaliatory intent, or any involvement whatsoever, regarding the ICA's reclassification of Thompson's security level, the CCS's decision to transfer him to ROSP, the attempted sexual assault by an inmate in 2015, or the alleged failure to treat his medical needs.  He does not allege any specific incidents involving the defendants; instead, he baldly asserts that Director Clarke and his subordinates manufactured charges and caused him injury.

Additionally, Thompson has not presented sufficient facts establishing that he will suffer irreparable harm if he is not transferred and/or reclassified.  Simply stating that he is in danger of irreparable harm does not entitle a plaintiff to an injunction.  *See Iqbal*, 556 U.S. at 678.

---

[9] While at RNCC, Thompson had been convicted of "Spitting/Throwing/Transferring of Bodily Waste/Fluids on Another Person," "Threatening Bodily Harm," and "Possession of Contraband."  Further, when Thompson was in protective custody after he informed on gang activity at RNCC, he continued to threaten staff and display disruptive behavior.

Therefore, Thompson has not plausibly alleged that he would likely succeed on the merits of Claim 4, or that he would be irreparably harmed without injunctive relief.[10]

### III. Conclusion

For the foregoing reasons, I will grant the motions for extension, deny the motion for reconsideration and the motion for preliminary injunction, and dismiss the motion for a ruling as moot.

An appropriate order will be entered this day.

**ENTER** this  5th  day of October, 2018.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[10] Thompson also appears to allege that he is being improperly kept in long-term segregation. However, he has not asserted any supporting facts for his allegations that implicate the defendants. Therefore, if Thompson wishes to pursue a claim regarding his long-term segregation, he is directed to file a new lawsuit.